Entertainer v. Hulu Mr. Thomas, whenever you're ready. Good morning, Your Honors, and may it please the Court. It's the plain meaning of the claim language at issue here, Claim 1, that resolves this dispute and that establishes that the PTAB got it wrong when it said that the Chen reference meets that claim language. Specifically, what I'm addressing is the first part of Claim 1 where it says, A link program adapted to both interrupt streaming and access ancillary content. The Board said that the definition of a link program, which we don't dispute, was a set of instructions that tells a computer what to do when a link is selected. A set of instructions. Program itself has no special meaning within the context of this patent. And if a computer programmer is told to go out and write a program that can perform functions A and B, that computer programmer would not believe that that program already exists because there's a program over here that does function A and there's another program over here that does function B. But that's exactly how the PTAB interpreted this language saying A link program adapted to both interrupt and access. Because it said that the Chen reference had a program for interrupting and it had a program for accessing. I have a question for you. In your brief on page 30, footnote 2, you say that a program could call on a subroutine in order to perform one of those two claim functions. How is that not then two separate sets of instructions? The subroutine, it's been a long time, but when I used to write programs, and if I used to write programs that included a subroutine, that subroutine had to be present so that it could be called by the main program. So therefore, it was part of the program. In other words, if that subroutine didn't exist as part of the program, the program wouldn't perform its function. That program, that subroutine may be go to line 1027 and perform the subroutine that's down here. When you're finished, come back up to line 256 and continue in the program. So it's not as if a… So it could be going to a library, for example. Yes. It has to be a subroutine within the program itself. A subroutine that's accessible to the program. Yes, Your Honor. And as I said, that's exactly what the PTAB has done here. They found a program that could do function A, a different program, a different set of instructions according to Dr. Bo, which is Hulu's expert, a different set of instructions in the decoder, and a different set of instructions in the hotlink. And they said, well, as long as both those functions are met, there exists a program that can do functions A and B. And as I said, if a supervisor went to a programmer and told that programmer, write a program according to this functional specification, and that functional specification had function A and function B, and that computer programmer went back to his supervisor and said, well, I already know of a program that does A, and I already know of a program that does B. My job is done. I don't think he'd get a very positive reaction from his supervisor at that point because that's not a program. Do you think there's anything in the spec that describes what a link program is versus just simply what a link program does? I think in the context of, and we know, for example, Your Honor, when the PTAB denied the institution under 112 grounds in this CBM, this covered business method application. Let me repeat my question. Do you think there's anything in the specification that describes what a link program is as opposed to what a link program does? Yes, I do, Your Honor, and I think it's not only in the specification. It's in the original claims as presented because the written description requirement encompasses what is in the original claims as part of the specification. The claims are very specific about what this link program is going to do. And it's written into the claim. Maybe I'm misunderstanding. I think Judge Chen was asking if there's anything about what the link program is, not what it does, and your answer seemed to be that it does. My answer, Your Honor, is that one of our nearest skill in the art of a programmer in this field would understand how to create a program that could accomplish those two functions. There's nothing new or unique about the source code, about the language that he wants to program in. There was enough in the specification such that one of our nearest skill in the art could create and practice the invention when told what that program needs to do. Are you asking me is there a source code that was attached? No, there's not. Are there flow charts in there? Yes. Is there an algorithm that's described in there that embodies this program? Yes. Is there a specific description of source code? No, there's not. What about the prosecution history? Prosecution history looked at simply the question of whether or not there was written description support for whether or not the link program was going to be transmitted or provided across a network. We can look at appendix page, I believe it's 339, where we explain how our expert, Dr. Lloyd, actually went ahead and looked at the program and described what the specification was teaching. And he said the specification teaches interface links. And I'm looking at the paragraph that starts with more over. Dr. Lloyd, our expert, explained, and then we quote from him, exactly what one of ordinary skill in the art would find when he looked into the specification. And what he said was the person of ordinary skill in the art would understand there were interface links, there were elements of the interface link program, and an interface link program is another name for a link program. What about the sentence above the paragraph you're relying on, where it said the fact that the computer performs those two functions in the claim when a user interacts with the interface link necessarily requires that there is a link program instructing the computer to perform those functions. So this sentence doesn't in any way seem to emphasize that you need to have a particular structure. And instead, so long as it performs the two functions, there's a link program. Well, that ignores the language of the claim, Your Honor, respectfully, because the link program has to do both functions. And it's the link program that has to do both functions. This is not an instance where the claim was written where it says a device having instructions capable of doing X or Y. This is not a capability claim. This isn't one of those kinds of claims where we often see where there's a computer that's capable of doing something, and it doesn't really matter where the instructions are or whether they're part of a program or part of multiple programs. But this is saying the very language, a link program, and saying that when a user – the fact that the computer performs the disclosed functions when a user interacts with an interface link necessarily requires that there is a link program instructing the computer. Yes, Your Honor. Well, there would have to be a link program, a set of instructions that is performing. But you need to read – I would suggest that the entirety of the specification in the prosecution history needs to be observed here, including the following paragraph, the one that I pointed Your Honors to. Because it's there that Dr. Loy explains what the relationship is between an interface link and an interface link program. The interface link is an element of the interface link program. It would make no sense to provide over a network another of the elements in this claim, only part of the program. So when you're providing the interface links, you're necessarily providing the link program. The interface links are elements of the interface link program. If I were going to provide a program and only provide half of the instruction set over a network, I wouldn't have a very happy recipient on the other end because with only half of the instruction sets or half of the elements of that instruction set, they wouldn't be able to perform what the claim requires. But if your 131 declarations and your response to the written description requirement described what's going on in that way, then maybe that's what we're forced to understand as to the meaning of the claim, that you're not necessarily sending over the pause function over the network along with the hyperlinks because the inventors declared in the declaration that they reduced the claimed invention to practice when with that embodiment they were able to send hyperlinks over the network for this service. And that those hyperlinks included – this was in the GAP demo. Those hyperlinks included what was necessary in order to perform the link program functions. That's what was said. There's no clear and unequivocal disclaimer here where anybody comes in here and says, my invention is sending separate programs across the internet to a recipient. This was all in the discussion of whether or not a link program was provided. The link program was defined as something in Claim 1 that could have both functionalities, the access and the interrupt functions. It's stated expressly in the claim. And moving on to the rest of those two elements in the claim where we believe that PTAB got it wrong, that other element says that the interface program or link program is provided over the network, and it says that the link program is associated with a video stream. Now what the PTAB said is, well, that doesn't mean that the entirety of the link program is transmitted over the network or is associated with a video stream. And I would suggest that that is also a misapplication of the plain and ordinary meaning of these claim terms, and moreover, it's not logical and it doesn't make a lot of sense. Why am I providing only part of what functionality is required for the link program, and I'm meeting the requirement that the link program, the one that has functions A and B, needs to be provided over the network? And I think it's important too, Your Honor, because it begs the question, what's the difference? What's the difference between sending the two programs, one that performs the access function and the other that performs a function of interrupting? Where's the beef here? It's important to put oneself back in the time frame when this invention was created, and that's back in the late 1990s and the early 2000s when Entertainer was a pioneer in delivering video-on-demand streaming services, one of the very first. And they were rolling these services out and did so in 35 different cities around the country, cable networks. But they had to provide it to video players, media players like Windows Media Player, that were not programmed and not built to be able to accept and read video-on-demand with what they call click-through capability. That is the ability to interpret URL links, hot links, that are embedded in the video stream. So what they had to do is they had to make sure they could service their customers, and in doing so they had to provide a link program along with the video that would allow those media players that their customers were using to both interrupt and access that ancillary content. And now that may sound like a simple step in hindsight, but back in the late 1990s and 2000s when video-on-demand services were nascent, if even available, you were working with a Windows Media Player that wasn't built to do that. When it comes to the patent owner overcoming the written description rejection or antedating references through 131 declarations, which statement in any of those statements in the prosecution history would you think is the best statement that clarifies that the inventors were telling the agency that when you send the link program over the network or when you associate the link program with video, you are not only sending over the access function, but you're also sending over the interrupt. I'll read the exact sentence from the prosecution history, and it's on appendix page 339, and it's at the bottom of the paragraph that starts more over Dr. Boyd. And it says, from this, it would be clear to a person of ordinary skill in the art that interface links are elements of the interface link program, that the interface link program is the same as the link program, and that the link program is delivered to client software in the manner described in the 884 application, and that includes where there's a program that does both the interrupt and the access functions. This is a plain and ordinary meeting case, Your Honors. I would like to point out, because there's a recent case from this court cited March of this year. It's In Re Varma v. IBM. And in the In Re Varma decision, the question was a computer program, and it was a computer program that recited a statistical analysis request corresponding to two or more selected investments. Two or more selected investments must be part of the statistical analysis. The PTAB found a piece of prior art that did a statistical analysis on one investment, not two or more. But the PTAB said, well, if you do that program twice, then you are doing a statistical analysis on two or more investments. And this court, and it's at 816 F3rd 1352, said that was an improper reading of that claim element. Why? Because it said doing something once and then doing the same thing again is not the same thing as doing something at the same time simultaneously. And to borrow the analogy that this court issued in this In Re Varma decision, if a dog owner has a dog that can both fetch and roll over, that's different than having one dog that can fetch and another dog that can roll over. It's not the same thing. Use your rebuttal, but before you go away, there was another patent involved between the parties, right? The 592 patent. Was there a CBM on that as well?  What's the status of that? I believe that has recently been issued a rejection by the PTAB, and we're looking at what our options are, and it's the same basis. So I suspect we'll be back up here. I think that whatever is decided here might very well have an impact on that case, Ron, but that's not been decided adverse to entertain. Thank you. We still have two minutes for rebuttal. Good morning, Your Honors. May it please the Court. Before I begin, I did want to introduce my co-counsel, Mr. Harper Batts, who tells me this is his first time here today. So I wanted to make sure the Court knew he was here and excited to be in front of the Court for his first time. Before you begin, is the other side's understanding of the other patent status correct, that there's some institution of some AIA proceeding where, by the institution, there's a suggestion that there could be a problem with the claims? So let me just say, first, I'm not counsel in that case, so I'm not going to be entirely accurate in my description, but the answer is no, that was an incorrect representation. As I understand it, that proceeding went through an inter-parties re-exam, so a pre-AIA procedure, and that that re-exam has now been completed. There was a final decision entered finding those claims invalid. I believe entertainers moved for reconsideration or rehearing of that finding, and I believe the PTAB has ruled against them on that recently. But, again, I'm not counsel in that case, so I can't be 100% positive. But that's my sense of the status of that case. Before I get into the details of what linked program should mean and why I think there's serious flaws in the patent owner's arguments on appeal, I did want to address the more important point, which is that even if you were to agree with them that the PTAB got the construction of linked program wrong in some substantive sense, and even if you could identify a competing construction that they're offering on appeal that was preserved below, which I seriously doubt you'll be able to do in the record, it wouldn't matter because the PTAB also found that the claims were anticipated by Chin's hot link stream alone, by itself. Nothing else is necessary. So because of that, even if you were to give them some additional construction that further cabined in the linked program to somehow have some definite structure where you could say this is what a limit of a linked program is, the hot link stream in Chin would satisfy that construction, and the PTAB has already told you that. They don't address this in their appeal briefs at all. They've made no attempt to show that there's any harmful error here in the claim construction. So for that reason alone, I think the court would have to affirm the PTAB's finding that Chin's hot link stream program would be sufficient. So let me just, with that in mind, draw you to a few places in the final written decision that I think are relevant to that finding. So most importantly, I guess I would start with appendix page 15 where the PTAB says, this argument ignores petitioner's position that Chin's hot link stream in the video, by itself, may constitute the linked program. They never responded to that argument below, which was the primary argument that petitioner was making. So all of this noise about whether a linked program could be one or two, or what even that would mean, completely irrelevant. The court could simply affirm the PTAB's finding that the hot link stream alone in Chin anticipates the claims, even under this more narrow construction that seems to be being proposed on appeal. And again, at joint appendix 15, the PTAB goes on to say, patent owner does not contest that Chin's hot link stream is both associated with the video and provided over the network. The PTAB also found that the hot link stream in Chin was a linked program that satisfies the other elements of the claim, in particular the elements having to do with being adapted to allow interruption and streaming of the video. So they never addressed it in the briefs. They never addressed it below to the PTAB. That's dispositive of the case. You don't even have to get into the nuances of what linked program would mean or how you would cabinet it in. But since I've got time left on the clock, let me turn to what the proper construction of linked program is because I think the construction that the PTAB adopted was correct. In fact, I heard my opposing counsel agree that the construction was correct when they stood up a few moments ago, saying they don't dispute the construction, nor could they. In their reply brief, they effectively admit that that's the construction that they propose and that they rely on. So really what they're challenging is the application of the claim construction to the Chin reference, which is, of course, a much more deferential standard of review that this court must apply to what the PTAB did here. And our contention is the PTAB did nothing wrong for, I think, the reasons that the court is already probably aware of based on the conversation that you had a moment ago with my co-counsel. So the first problem is what would – if we're going to adopt the construction that it's – if the PTAB's construction was correct, that it's just a set of instructions that tells the computer what to do, what more are they asking you to do to this construction? What are they – That's a little unfair, is it not? Because the PTAB subsequently clarified its construction to say it didn't need to be limited to a single program, and that ends up being the dispute that's joined here, that leaving aside your alternative argument, this case is all about. Correct. I think they made an argument on application that the PTAB interpreted as a claim construction argument, and we, frankly, interpreted it as a claim construction argument below, that they were essentially trying to argue that the claim construction was wrong and it should require a single program. The PTAB, I think, interpreted that as a claim construction argument correctly and rejected it, saying we see no reason to limit this claim to a single. Okay, so it's not an application of a claim construction. It really is fairly a claim construction dispute, I think. They're characterizing it as an application of the claim construction. That's my point, is that under the way they've characterized this appeal, they've set the appeal up supposedly as a dispute on application of claim construction, and that's a different standard of review. Now, as to the claim construction point, though, that you're asking about. But why would it help them to have a more differential standard of review? Yeah, no, it doesn't help them at all. I think the problem is that they never contested explicitly the claim construction below. They didn't preserve a claim construction that would change the results. I thought in a statement of the issues on page 1 of the Blue Brief, where they say whether the board erred in construing the claim terms such that no single link program that performs both functions is required. Why isn't that preserving the issue? Okay, well, that would preserve the issue except that I heard co-counsel stand up and say they don't dispute the construction. No, he read what the construction was before he got to whether it's two programs or not, and he said we don't dispute that. So anyway, I think that we think this is an issue of claim construction. Fair enough. So let's address that. Then what is the right claim construction? That's the question. And what are they proposing the claim construction could be that would distinguish this alternative reading of CHIN, right, this alternative application of CHIN where you combine the streaming links program with the decoder? What is the construction that would distinguish that from the claims? The answer is I don't know because they don't tell us. I mean, if you look in their – Why can two programs be a program? I think that's the gist of the issue here. So I dispute the premise that we know what a program is. It's not clear at all that there's a limit to what a program is. So during questioning during the appellant's presentation, I heard the problems with trying to identify what a program is. I mean, there's always going to be code – Instinctively or intuitively when you say a link program, you feel like you're talking about something in the singular, right? And the way the board construed that is a set of instructions. So that is a singular thing. It is a set of instructions. The problem is where do you define the ends of that set? Can you just look at one particular place on the computer? Do you include – Like how far down do you go? Do you go into the code libraries? Do you go into the operating system? There's many, many levels of instructions that are executing on a computer at any time. And what's the structural limitation? I mean, if they want to make this grand argument about some structural limitation on where the scope of a program is, it's up to them to tell us what that structural limit is, show support for that in either the claim language – Well, is it right to conclude that any two sets of instructions located anywhere on the network can somehow be plucked and smashed together and then deemed to be a single set of instructions? I think if those separate set of instructions were working together to make the claim, then yes, because that's exactly – What if one is doing one discrete function and then the other one is doing a different discrete function? Can someone look at the entire matrix and then pull those two things together and say, aha, this is together now these two discrete sets of instructions performing two discrete functions, now a program, now a single set of instructions? Sure. Does that – give me something. Okay. Well, those aren't our facts, so you don't have to worry about the extent of this hypothetical, but I think even on that hypothetical, my answer would be in this case, yes, because of what was happening during the file history. I mean, in particular, in this case, to obtain allowance of these claims, the inventors and their expert had to come in and swear to the patent office that any disclosure of a computer performing this function is enough. So if that's what you – if you see a computer performing these functions, that's all you need to see to assure yourself there is a link program, and that's what we have in the Chin reference. I mean, there's – clear as day, the Chin reference does exactly – I mean, it's almost literally word for word what they say this GAP demo was that supposedly practiced the claims. So you're referring to – let's look at 339. So you're referring to the sentence that Judge Stowe, I think, called our attention to at the top of the page, but what about what your paragraph started more of? Yeah. I mean, I think the end of the paragraph supports our view of link program as well. I mean, there's nothing in that sentence that takes away from what was said in the sentence before that any disclosure is enough. I mean, it's not like this was a one-off sentence. They say it numerous times in the file history. So, for instance, if you look at joint appendix page 362, this is the declaration of their expert, Dr. Lloyd, during ex parte prosecution. He says, again, any disclosure – this is where this language comes from – any disclosure of a computer performing various tasks necessarily means that there is a corresponding program providing the required instructions to perform that task. Therefore, the fact that the computer performs the disclosed functions when a user interacts with interface link necessarily requires that there is a link program instructing the computer to perform those functions. Do you agree with your friend that we're requiring a clear and unmistakable disclaimer in this circumstance or is something less required to turn to the prosecution history? Well, this is not a disclaimer case. So, I mean, I agree in general if I'm trying to narrow an otherwise broad claim by using the file history that we need to find a clear and unmistakable disclaimer, but that's not the argument that's being made here. And that's not the case because there's no plain and ordinary meaning to the term link program? Well, that's certainly true. I mean, there's no evidence that there's any plain and ordinary meaning to the term link program. The only expert testimony is Dr. Boe, who said there is no plain and ordinary meaning to the term link program. But there's several cases from this court where the file history is used in a similar way to understand the claims in a broad way, which might even contradict a plain meaning. So, for instance, Arlington Industries, 632 F3rd 1246, the Laranjeal Mask Company at 618 F3rd 1367, and the Saunders Group at 492 F3rd 1326. All of them involve instances where the file history is looked to to help interpret the scope of the claim in a way that might be considered broadening in some sense. But I did want to get back to Dr. Loy's testimony because there's another section that follows the one I just quoted that's even more instructive to this point, I think. So as you remember here in the file history, the examiner had rejected initially these declarations that attempted to amputate a prior art reference, noting that the way you've reduced this program, this idea to practice doesn't seem to be sufficient in accordance with the claim language because there's no link program here. It's just a stream of hot links talking to something else, i.e. the same argument that they're making here now on appeal. And Dr. Loy responded to the examiner's rejection, noting, a link program is not properly an application in the plain meaning of that word. The ordinary meaning of the term application is software operated directly by the user. The term program, in quotes, is more general, covering also software that's not operated directly by the user, such as code libraries, background tasks, and operating systems. So even in the file history itself, we see that this notion of program is defined in this very amorphous way, purely in functional language, to talk about anything at all on this computer that's performing these functions. What page is that of the joint appendix? Sure, this is 362 of the joint appendix, which is the declaration testimony of Dr. Loy that's referred to in the file history section we looked at on page 339. The last thing I want to say in my remaining minute on this problem of defining what a boundary of a program could be is, again, if you look in the briefs, the patent owner here has proposed about nine different ways of defining what a link program should be, none of which are consistent, to be honest. So it varies from a single link program, which I think is the construction that we're sort of talking about, to, on page 17 of their opening brief, they talk about a multi-element program being within the scope of the claims. There's the footnote on page 30 that I think Judge Stahl asked about, where they talk about the program being a compilation of instructions that, when executed by initiating a run command, must perform both of the recited functions. None of these constructions were presented to the PTAB. There's no evidence of record to support any of them. But that's the problem with this claim, is there's no way to define this term link program any way other than the way the PTAB did, which is to look in the file history and see, well, what did you say it meant before to get the claim allowed in the first place? And what you said was, it's anything running on a computer that performs that function. That's exactly what the PTAB found present in the prior reference here. Thank you. Thank you. Thank you, Your Honors. Addressing first this allegation that the hot link by itself would somehow anticipate the claim, that's simply not right. What the court said, and the PTAB said, and it's at appendix page 15, is that the hot link is both provided over the network and associated with the video stream. And we don't dispute that. But that does not mean that the hot link by itself comprises a link program. Yeah, but I thought the point your friend was making, if he didn't make it, I'll make it, which is it's kind of a waiver position. Whether you agree or disagree with how they got there, do you disagree that they said that this was an alternative basis for reaching the conclusion they reached? And if that's the case, why you're not raising it on appeal or responding to your friend's red brief, does that not constitute a waiver? Because it's the same argument, Your Honor. We're saying that there's no link program and that the hot link stream by itself does not constitute a link program. I mean, that's what we've been saying all along. We've been saying that a link program that does functions to both access and interrupt is not a link program. We said that about the hot link program and we said that about the decoder in CHEN. And so this is the exact same argument, Your Honor. We couldn't have waived it. It's the same argument being applied. If the hot link program is not a link program that does both functions, it's not for the first claim element and it's not for later claim elements either. So it's not dispositive of the issue. The issue is whether a link program is a set of instructions. And I would point us back again to Appendix Page 339 where our expert, Dr. Loy, said, as such, one having ordinary skill in the art would appreciate that the claimed link program is merely the list of instructions that perform the disclosed functions. The list of instructions. That's a program. And we know that one of ordinary skill in the art can identify where lists of instructions exist and are separate from each other because that's exactly what Dr. Bo, their expert, did. And it's in his deposition at Appendix Page 2680 where he identified three sets of instructions in the CHEN reference. One set of instructions was the hotlink that went out and got the ancillary content. The other set of instructions was the decoder that interrupted the video stream. And a third set of instructions was the set of instructions that displayed whatever content, ancillary content, was pulled down from the Internet. So Dr. Bo had no problem whatsoever in identifying in CHEN where there are three separate sets of instructions. Which he said don't necessarily relate to one another either. And that's on 2714 and 2741 of the appendix in his deposition where he said no. You know, the hotlink instructions aren't necessarily associated with the decoder. And the decoder is not necessarily associated with the video stream. But the point being is he knew how to identify a list of instructions. And all our experts said in the prosecution history was that in the embodiment of this invention that Entertainer rolled out, that one of ordinary skill in the art would appreciate that the link program in that embodiment is merely the list of instructions that perform the claimed functions. And then he identified where that resides in the interface link, which is an element of the interface link program, which is an element of the link program. An element of the link program, not some separate set of instructions. So the suggestion that one of ordinary skill in the art here wouldn't know how to identify a set of instructions that is intended to perform specific functionality in a computer is belied by the testimony of Hulu's own expert, Dr. Bo. Okay. Thank you. We thank both counsel and cases submitted.